[Cite as *InFrasys, Inc. v. Bros. Pavement Prods., Corp.*, 2020-Ohio-1157.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY


InFrasys, Inc., et al.

     Appellants

v.

Brothers Pavement Products,
Corp., et al.

     Appellees

Court of Appeals No. E-19-047

Trial Court No. 2018 CV 0332


**<u>DECISION AND JUDGMENT</u>**

Decided:  March 27, 2020

* * * * *

James L. Murray, Dennis E. Murray, Jr. and William H. Bartle,
for appellants.

James W. Hart and Mark P. Smith, for appellees.

* * * * *

**ZMUDA, P.J.**

{¶ 1} This matter is before the court on appeal from the judgment of the Erie

County Court of Common Pleas, granting the motion to dismiss for lack of personal

jurisdiction of appellees Walsh & Hughes, Inc., dba VelveTop Products, Inc. and John B. Walsh.

## I. Facts and Procedural Background

{¶ 2} Appellants, InFrasys, Inc. and ThorWorks Industries, Inc. are related Minnesota corporations, with their principal place of business in Erie County, Ohio. ThorWorks owns the SealMaster brand, and manufactures and sells seal coating products and equipment to SealMaster system franchises. InFrasys oversees and supports the franchise owners, and protects the SealMaster brand. InFrasys is the franchisor for the SealMaster system.

{¶ 3} Walsh & Hughes, Inc. dba VelveTop Products, Inc. ("VelveTop") is a New York corporation, with John B. Walsh as the president and owner. Brothers Pavement Products, Corp. (Brothers) is a New York corporation doing business with VelveTop. John K. Walsh and James K. Walsh are the owners/operators of Brothers. John B. Walsh is the father of John K. and James K. Walsh.

{¶ 4} The facts alleged by appellants regarding appellees, relative to the issue of personal jurisdiction, are as follows.

{¶ 5} In July 2007, John B. Walsh traveled to Ohio to negotiate VelveTop's sale of SealMaster products to the Long Island, New York area. John B. Walsh followed up by phone to InFrasys in Ohio to continue negotiations, and responded to correspondence from InFrasys on behalf of his sons and their company, Brothers. The franchise

2.

negotiations resulted in the Supplier Agreement between VelveTop and Brothers, and a Franchise Agreement between InFrasys and Brothers.

{¶ 6} On April 11, 2008, appellee VelveTop entered into a Supplier Agreement with Brothers. The agreement concerned the production and supply of SealMaster products to VelveTop, requiring VelveTop to cease manufacture of its sealers pursuant to a contractual phase-in of purchasing SealMaster products from Brothers, with 100 percent of seal coat products purchased from Brothers within three years, and 100 percent of asphalt emulsion sealer purchased from Brothers commencing the first day Brothers began manufacture of the sealants. The Supplier Agreement also expressly referenced the InFrasys franchise as follows:

> 4. Notwithstanding the terms and conditions of this agreement, it is the understanding between the respective parties that all other terms and conditions which would apply to market conditions, such as pricing, supply, need, etc. will apply and that this agreement is entered into based on the familial relationship between the principals of the parties to this agreement **and as an inducement for INFRAYSIS [sic], INC. to grant its franchise to BROTHERS PAVEMENT PRODUCTS CORP.**
>
> (Emphasis added.)

{¶ 7} InFrasys and Brothers executed the InFrasys, Inc. Franchise Agreement on June 11, 2008. The franchise agreement recited a term of ten years, and granted Brothers the right to a SealMaster sales and distribution business, with additional permission to

3.

manufacture pavement sealers marketed with the SealMaster brand. The franchise was exclusive within Brother's New York territory. Pursuant to the Franchise agreement, InFrasys permitted Brother's use of all SealMaster proprietary marks and copyrighted materials, and shared the InFrasys confidential operations manual and other confidential information, including processes, systems, and product specifications.

{¶ 8} The Franchise agreement expressly referenced VelveTop in Paragraph XVI.H. as follows:

> H. <u>Special Provisions Regarding VelveTop Products, Inc.</u> Anything in this Paragraph XVI. to the contrary notwithstanding, Franchisor, Franchisee and the individual shareholders of Franchisee (the "Individual Shareholders") who are executing this Agreement (who are also deemed to be "Franchisees" by virtue of Paragraph XVI.B) hereby agree as follows:
>
> 1. Franchisor acknowledges that John B. Walsh ("John Sr.") is the father of the Individual Shareholders and that he owns and operates a business by the name of VelveTop Products, Inc. ("VelveTop"), which will be in direct competition with the franchised Business after commencement of the terms of this Agreement.
>
> 2. Franchisor agrees that VelveTop and John Sr. may continue their current business under the terms of a Supplier Agreement with Franchisee,

4.

a copy of which is attached as Exhibit C.[1]  The Supplier Agreement shall continue in force between the parties thereto through the term of this Agreement and may not be amended without prior consent of Franchisor. Franchisor further agrees that the Supplier Agreement may be assigned at the time of any sale of VelveTop.  As referenced in the Supplier Agreement, Franchisor defines DECO SURFACING PRODUCTS to be any product in direct competition with the Franchisor's SportMaster brand.

{¶ 9} The Franchise Agreement contained a choice of law and venue clause, requiring Ohio law and jurisdiction in Erie County, Ohio, with a waiver of personal jurisdiction in Paragraph XXIX.B.  Both John K. and James K. Walsh executed the Agreement on behalf of Brothers.

{¶ 10} On February 6, 2018, appellants terminated the franchise of Brothers alleging numerous breaches of the Franchise Agreement, including the failure to enforce the terms of the Supplier Agreement between VelveTop and Brothers.  On June 14, 2018, appellants filed a complaint in Erie County Common Pleas Court, alleging breach of the Franchise Agreement and Supplier Agreement, and seeking monetary and injunctive relief.  As to VelveTop and John B. Walsh, appellants alleged tortious interference with a business/contractual relationship, and claimed VelveTop failed to comply with the

---

[1] Exhibit A delineated the geographical territory for the franchise of Brothers, and Exhibit B contained personal guaranties and assumptions of obligations by John K. and James K. Walsh, each owning 50 percent in Brothers.

phase-in periods in the Supplier Agreement and continued to manufacture its own sealers. Appellants further alleged that Brothers sold "ingredients" for this unauthorized manufacture rather than the finished product.

{¶ 11} Appellants alleged that ThorWorks is an intended third-party beneficiary of the Franchise Agreement and Supplier Agreement, and InFrasys is an intended third-party beneficiary of the Supplier Agreement.

{¶ 12} After extensions, discovery disputes, and limited discovery regarding the issue of jurisdiction, VelveTop and John B. Walsh filed a motion to dismiss, alleging lack of personal jurisdiction. InFrasys and ThorWorks opposed dismissal. They alleged John B. Walsh controlled the negotiations for both VelveTop and his sons' company, Brothers, traveled to Ohio for initial negotiations, called InFrasys in Ohio for continued negotiations, and sent his VelveTop trucks to ThorWorks in Sandusky, Ohio, to pick up SealMaster materials and products.

{¶ 13} While apparently acknowledging John B. Walsh's participation in negotiations and his visit to Sandusky in 2007, appellees argued that they never had an intention to enter into any agreement with appellants, and lacked the necessary contact with the forum state to permit an exercise of personal jurisdiction.

{¶ 14} The trial court determined the motion based on the memoranda, affidavits and deposition transcripts submitted in support.[2] The trial court noted the applicable

---

[2] The record on appeal does not include the deposition transcripts.

6.

standard in ruling without hearing, that appellants need only make "a prima facie showing of jurisdiction" to survive the motion to dismiss. In applying the standard under R.C. 2307.382 and Civ.R. 4.3(A)(1), the trial court determined that appellants satisfied the first prong of the *Goldstein* test, finding an exercise of personal jurisdiction proper under the long-arm statute and applicable civil rule based on *Goldstein v. Christianson*, 70 Ohio St.3d 232, 235-236, 638 N.E.2d 541 (1994). As to the second prong, however, in applying the three-part test for due process, the trial court found that VelveTop and John B. Walsh had the required minimum contacts and caused injury within the forum state. The court determined, however, that the exercise of personal jurisdiction would be unreasonable and deprive VelveTop and John B. Walsh of due process.

{¶ 15} As to this third factor of the due process analysis, the trial court found the lack of evidence regarding frequency of travel to the ThorWorks site by VelveTop trucks weighed against personal jurisdiction. The trial court, furthermore, noted that VelveTop and John B. Walsh executed the Supplier Agreement two months prior to execution of the Franchise Agreement, and made no mention of any connection between the two agreements, as alleged by appellants.

{¶ 16} The trial court granted dismissal of VelveTop and John B. Walsh for want of personal jurisdiction, and entered a finding of no just cause for delay. In a subsequent "Nunc Pro Tunc" entry, the trial court sua sponte revised its judgment, striking the final appealable language from the dismissal judgment entry. After appellants moved to

7.

reinsert the final appealable language, the trial court did so, finding the dismissal judgment entry to be final and appealable once more.

## II. Assignments of Error

{¶ 17} InFrasys and ThorWorks now appeal the dismissal, asserting the following assignments of error:

1. The Trial Court Erred in Granting Defendants, Walsh & Hughes, Inc., dba VelveTop Products, Inc. and John B. Walsh's Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction.

2. The Trial Court Erred in Removing, Via its 8-13-2019 *Nunc Pro Tunc* Judgment Entry, the Civil Rule 54(B) Certification Included in its Initial Judgment Entry of 8-7-2019. The 8-7-2019 Judgment Entry Granting Defendants, Walsh & Hughes, Inc. and John B. Walsh's Motion to Dismiss for Lack of Personal Jurisdiction Was and Remains a Final Appealable Order.

## III. Analysis

{¶ 18} Because the parties dispute whether the trial court's judgment entry of dismissal constituted a final appealable order, we address appellants' second assignment of error first, as a threshold matter.[3]

---

[3] Appellees did not seek to dismiss this appeal for want of a final appealable order.

8.

## A. Final Order

{¶ 19} In dismissing VelveTop and John B. Walsh as defendants for want of personal jurisdiction, the trial court initially included Civ.R. 54(B) language in the judgment entry, finding no just cause for delay. The Rule permits appeal of an otherwise interlocutory order pertaining to only some of the parties, if the judgment determines the action as to those parties and includes the determination that there is "no just reason for delay." *See* Civ.R. 54(B) ("* * * [T]he court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.").

{¶ 20} Days later, the trial court ordered, sua sponte, the Civ.R. 54(B) language stricken from the judgment of dismissal through a nunc pro tunc entry. As an initial matter, we note that a nunc pro tunc entry is properly used to correct a judgment entry so that it reflects the action actually taken by the court, and not to amend an entry to effect substantive change. As the Ohio Supreme Court noted in *State ex rel. Rogers v. Rankin*, 154 Ohio St. 23, 26, 93 N.E.2d 281(1950):

> "It is elementary that courts possess inherent common-law power to enter judgments or orders nunc pro tunc in proper cases. The phrase meaning simply 'now for then' is accurately descriptive. The general purpose of such an entry is to record a prior but unrecorded act of the court. In other words, the power to make nunc pro tunc entries is restricted ordinarily to the subsequent recording of judicial action previously and

actually taken.  It is a simple device by which a court may make its journal speak the truth."  (Citation omitted.)

The clerical purpose of a nunc pro tunc entry means a court may not amend a final judgment, nunc pro tunc, to deprive the parties of "any rights which the previous order had accorded * * * nor make that order any less final * * *."  *Green v. Ken's Flower Shops*, 6th Dist. Lucas No. L 94-088, 1994 WL 620732, *1-2 (Nov. 10, 1994), quoting *Huntington National Bank, v. Hebeka*, 6th Dist. Lucas Nos. L 90-318 and L 90-360, 1992 WL 323945 (Jan. 4, 1991); *Perfec. Stove Co. v. Sherber*, 120 Ohio St. 445, 448, 166 N.E. 376 (1929).

{¶ 21} Here, the trial court attempted to substitute a new and different action, striking the original finding of "no just cause for delay."  There appears no record, furthermore, supporting appellees' argument that the trial court intended the judgment to be merely interlocutory from the outset.  The record, instead, demonstrates a judgment containing Civ.R. 54(B) language, and an attempt to substantively change the judgment through a nunc pro tunc entry, only to be amended once more in a third entry.  The change, accordingly, sought to reverse an action taking in the final judgment, with no record to support a finding that the nunc pro tunc entry merely recorded an action already taken.  Therefore, the trial court could not convert its final appealable order by nunc pro tunc entry.

{¶ 22} The trial court, furthermore, had no jurisdiction to modify the final appealable order sua sponte.  Generally, a trial court lacks authority to vacate or modify a

10.

final judgment, sua sponte, without a written motion under Civ.R. 60(B) seeking relief from judgment. (Citation omitted.) *Midwest Environmental Controls, Inc. v. Houttekier*, 6th Dist. Lucas No. L-04-1118, 2004-Ohio-5999, ¶ 3; *see also Maxwell v. Univ. Hosps. Health Sys., Inc.*, 8th Dist. Cuyahoga No. 104100, 2016-Ohio-7401, ¶ 5, citing *Allstate Ins. Co. v. Witta*, 9th Dist. Summit No. 25738, 2011-Ohio-6068, ¶ 19, citing *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 380, 423 N.E.2d 1105 (1981) ("A trial court may only relieve a party from judgment by the mechanisms provided by the Ohio Rules of Civil Procedure."). The trial court, therefore, erred in attempting to modify the final judgment entered as to VelveTop and John B. Walsh without a proper written motion, and its subsequent judgment entries were a nullity.[4]

{¶ 23} Finally, we note that a dismissal for lack of personal jurisdiction has been determined as appropriate for appeal where the judgment prevents a refiling in the trial court. In *Natl. City Commercial Capital Corp. v. AAAA At Your Serv., Inc.*, 114 Ohio St.3d 82, 868 N.E.2d 663, 2007-Ohio-2942, ¶ 10, the Ohio Supreme Court considered whether dismissal for lack of personal jurisdiction constituted a final appealable order. In that case, the court noted that parties challenging the assertion of personal jurisdiction may appeal the judgment. *Id.*, citing *Goldstein*, 70 Ohio St.3d at 235, 638 N.E.2d 541, citing *State ex rel. Bradford v. Trumbull Cty. Court*, 64 Ohio St.3d 502, 597 N.E.2d 116

---

[4] While no party argues the trial court lacked authority to enter a third judgment entry, restoring the language of the first, the initial entry constituted a final appealable order, and therefore any subsequent action, entered without a motion under rule permitting modification, was without authority and a nullity.

11.

(1992) and *State ex rel. Pearson v. Moore*, 48 Ohio St.3d 37, 548 N.E.2d 945 (1990). A party challenging the opposite result, therefore, should also have the ability to appeal. In *Natl. City*, the dismissal prevented a refiling in the trial court, despite indicating it was without prejudice. In that case, the Supreme Court held, "[i]t is not logical to allow a party that believes a court wrongly asserted jurisdiction to appeal but to prevent a party that believes a court wrongly did not assert jurisdiction from appealing." *Natl. City* at ¶ 10.

{¶ 24} In this case, appellants assert exclusive jurisdiction in Erie County, Ohio, as to all defendants, pursuant to the Franchise Agreement, which purportedly incorporates the Supplier Agreement. The trial court's ruling, finding no personal jurisdiction over appellees, prevents a refiling in that court. Therefore, considering the trial court's determination of a final appealable order under circumstances that prevented refiling in the trial court, we find appellants' second assignment of error well-taken, and find this matter is properly before us on appeal.

### B. Personal Jurisdiction

{¶ 25} In their first assignment of error, appellants argue the trial court erred in finding it lacked personal jurisdiction over appellees. Appellants alleged personal jurisdiction based on contacts with the forum state, and in the alternative, based on a consent to jurisdiction within the Franchise Agreement.

{¶ 26} As to appellants' claim of consent to jurisdiction pursuant to the Franchise Agreement, we note appellants rely—in part—on argument going to the merits of their

12.

third-party beneficiary claims. Appellants seek to enforce the forum selection clause of the Franchise Agreement against VelveTop and John B. Walsh as non-signatories who benefited from the arrangement.[5] The issue before us is personal jurisdiction, and because our determination of minimal contacts and due process is dispositive, we do not reach the merits of appellants' claims.

{¶ 27} When a nonresident defendant seeks dismissal pursuant to Civ.R. 12(B)(2), the plaintiff bears the burden of demonstrating proper jurisdiction. *Ashton Park Apts., Ltd. v. Carlton-Naumann Constr., Inc.*, 6th Dist. Lucas No. L-08-1395, 2009-Ohio-6335, ¶ 12, citing *Jurko v. Jobs Europe Agency*, 43 Ohio App.2d 79, 334 N.E.2d 478 (8th Dist.1974). "Personal jurisdiction is a question of law that appellate courts review de novo." *Kauffman Racing Equip., LLC v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 27.

---

[5] Appellants rely on *Villanueva v. Barcroft*, 822 F. Supp.2d 726 (N.D.Ohio 2011), where a non-signatory sought to enforce a forum selection clause against a signatory party. The facts in the present case are distinguishable, and more aligned with the facts in the Third Circuit Court of Appeals case of *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Interm., S.A.S.*, 269 F.3d 187 (3d Cir.2001). In *E.I. DuPont*, the Third Circuit noted that a non-signatory could be bound to a forum selection clause under contract principles governing third-party beneficiaries to the underlying agreement. Citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202-204 (3d Cir.1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989).

13.

{¶ 28} Where the trial court determines the matter without an evidentiary hearing,[6] appellants need only make a prima facie showing of jurisdiction. *Kauffman* at ¶ 27, citing *Fallang v. Hickey*, 40 Ohio St.3d 106, 107, 532 N.E.2d 117 (1988). A prima facie showing of personal jurisdiction requires "sufficient evidence to allow reasonable minds to conclude that personal jurisdiction exists over the defendant." *Figley v. Ivex Protective Packaging, Inc.*, 2016-Ohio-3501, 70 N.E.3d 12 (3d Dist.), quoting *Parshall v. PAID, Inc.*, 10th Dist. Franklin No. 07AP-1019, 2008-Ohio-3171, ¶ 9, citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1984) (additional citation omitted.). We "view allegations in the pleadings and the documentary evidence in a light most favorable" to appellants and resolve "all reasonable competing inferences" in appellants' favor in making the determination. *Kauffman* at ¶ 27, citing *Goldstein* at 236.

{¶ 29} Courts apply a two-step analysis in determining the proper exercise of personal jurisdiction over a nonresident defendant, with the second prong requiring consideration of three factors. This analysis requires determination of "(1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction and, if so,

---

[6] Unlike a Civ.R. 12(B)(6) motion, which limits review to the pleading, a court may consider outside evidence in determining its own jurisdiction, and may also hold an evidentiary hearing. *See, e.g., Jurko v. Jobs Europe Agency*, 43 Ohio App.2d 79, 85, 334 N.E.2d 478, 482 (8th Dist.1975) ("When a court considers a challenge to its jurisdiction over a defendant-a defense which may require the taking of extensive evidence-the court may hear the matter on affidavits, deposition, interrogatories, or receive oral testimony, as matters of jurisdiction are very often not apparent on the face of the summons or complaint.").

14.

(2) whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution." *Kauffman* at ¶ 28, citing *U.S. Sprint Comm. Co. Ltd. Ptnshp. v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 183-184, 624 N.E.2d 1048 (1994). Here, the trial court found the first prong satisfied, and the first two factors under the second prong met, but ultimately determined that exercise of personal jurisdiction offended due process under the final factor of the due process analysis. For the reasons that follow, we disagree with the trial court's conclusion.

### 1. Jurisdiction Pursuant to Statute or Rule

{¶ 30} Ohio's long-arm statute, R.C. 2307.382 enumerates conduct that will permit a court's exercise of personal jurisdiction, including:

> (A)(1) Transacting any business in this state;
>
> * * *
>
> (A)(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> * * *
>
> (A)(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he

15.

might reasonably have expected that some person would be injured thereby

in this state[.]

Civ.R. 4.3(A), likewise, permits service of process on nonresidents who have "caused an event to occur out of which the claim that is the subject of the complaint arose" based on "(1) Transacting any business in this state[.]"  Civ.R. 4.3(A)(1).

{¶ 31} The "transacting any business" standard is "a broad statement of jurisdiction[.]"  *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 185, 624 N.E.2d 1048 (1994), citing R.C. 2307.382(A)(1). "Transact," means "to prosecute negotiations; carry on business; to have dealings * * *. The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion * * *."  *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990), quoting Black's Law Dictionary, 1341 (5 Ed.1979).

{¶ 32} Appellants referenced documentary evidence to support their allegations, which are as follows.  John B. Walsh initiated the contact with the forum state by traveling to Sandusky Ohio in 2007 to inquire about VelveTop becoming a SealMaster franchise.  John B. Walsh followed up this contact with phone calls, leading negotiations in order to facilitate a Brothers' franchise, as an alternative to VelveTop obtaining the franchise.  John B. Walsh executed the Supplier Agreement with Brothers on behalf of VelveTop, and that agreement expressly stated its purpose was to induce InFrasys to

16.

grant the franchise to his sons, and their company, Brothers. John B. Walsh also sent VelveTop trucks to Ohio on numerous occasions each year, to pick up materials and goods from ThorWorks. Additionally, after InFrasys and ThorWorks raised concerns of a potential breach of the Supplier Agreement, John B. Walsh attended a meeting in Sandusky regarding the issue, and John B. Walsh spoke on behalf of his sons and Brothers. Based on these allegations, reasonable minds could conclude that appellants satisfied their burden of establishing a prima facie showing of personal jurisdiction over appellees, in conformity with R.C. 2307.384 and Civ.R. 4.3.

## 2. Due Process

{¶ 33} Once we determine that appellants satisfied both the Ohio long-arm statute and rule, we must consider whether the exercise of personal jurisdiction comports with due process. Although the long-arm statute permits exercise of personal jurisdiction, an Ohio court may only do so if the exercise of jurisdiction would not violate constitutional rights to due process. *Kauffman,* 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, at ¶ 45.

{¶ 34} "[D]ue process is satisfied if the defendant has 'minimum contacts' with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Kauffman* at ¶ 45, quoting *Internatl. Shoe Co. v. Washington*, 325 U.S. 310, 316, 66 S.Ct.154, 90 L.Ed.95 (1945) (additional citation omitted.). Where a defendant "purposefully avails" themself "of the privilege of conducting activities within the forum state," the minimum-contacts requirement is

deemed to be met. *Kauffman* at ¶ 45, quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1968).

{¶ 35} We apply a three-part test to determine whether a defendant has the minimum contacts necessary for exercise of personal jurisdiction and necessary to satisfy due process. *Henderson v. SMC Productions, Inc.*, 6th Dist. Erie No. E-18-003, 2019-Ohio-5275, ¶ 64. To demonstrate the necessary contacts, appellants must demonstrate that (1) appellees "purposefully availed" themselves of the privilege of acting in Ohio or causing a consequence in Ohio; (2) the cause of action must arise from appellees' activities in Ohio, and (3) the appellees' acts or consequences must have a substantial enough connection with Ohio to make exercise of jurisdiction reasonable. *Henderson* at ¶ 64, citing *Ohlman Farm & Greenhouse, Inc. v. Kanakry*, 6th Dist. Lucas No. L-13-1264, 2014-Ohio-4731, ¶ 26; *see also Kauffman* at ¶ 48-49, quoting *Southern Machine Company v. Mohasco Ind., Inc.*, 401 F.2d 374, 381 (6th Cir.1968); *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir.1989).

### a. Purposeful Availment

{¶ 36} To demonstrate "purposeful availment," appellants must show that appellees' contact proximately resulted from appellees' own conduct that created a "substantial connection" with Ohio. *Kauffman* at ¶ 51, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (additional citation omitted.). A substantial connection is required to ensure "that a defendant will not be

18.

haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Kauffman* at ¶ 51, citing *Burger King* at 474-475**.**

{¶ 37} Here, appellants made a prima facie showing as to the first factor of the test. Appellants presented evidence, demonstrating VelveTop, through John B. Walsh, first sought an Ohio-based SealMaster franchise opportunity for VelveTop. He later negotiated the franchise on behalf of Brothers, and as inducement for InFrasys to grant the franchise to Brothers, VelveTop and Brothers entered into a Supplier Agreement. VelveTop benefited from the combined deal by gaining access to the SealMaster catalog and brand, pursuant to the terms of the Supplier Agreement. Negotiations took place in Ohio, and VelveTop traveled to Ohio three or four times each year to pick up product from ThorWorks. After InFrasys determined that breach of the Supplier Agreement and Franchise Agreement had occurred, resulting in diminished royalties under the Franchise Agreement, John B. Walsh traveled to Ohio to discuss the breach of the agreements. Considering the allegations, with supporting evidence as to the factor used in determining prima facie support for personal jurisdiction, we find appellants satisfied the first factor.

**b. Harm Caused in the Forum State**

{¶ 38} As to the second part of the test, appellants must show that the cause of action arose, in Ohio, as a result of appellees' activities. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Kauffman* at ¶ 70, quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996). Only a "relation" is necessary, as the

19.

test "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Kauffman* at ¶ 70, quoting *Third Natl. Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1091 (6th Cir.1989), quoting *S. Machine Co.,* 401 F.2d at 384, fn. 27.

{¶ 39} Here, appellants alleged that the conduct of VelveTop and John B. Walsh, in failing to honor the Supplier Agreement, caused damages to their business in Erie County, Ohio. Specifically, appellants alleged that VelveTop failed to purchase SealMaster finished products and equipment from Brothers, depriving InFrasys of royalties, fees, and income due under the Franchise Agreement, and depriving ThorWorks of revenue and profits from the sale of these products. Additionally, as to VelveTop and John B. Walsh, appellants alleged a claim for interference with the business relationship with Brothers by refusing to honor the Supplier Agreement. Appellants supported their allegations with affidavit testimony, describing violations of the Supplier Agreement and John B. Walsh's admission of violations. Considering the allegations, with supporting evidence as to the factor used in determining prima facie support for personal jurisdiction, we find appellants satisfied the second factor.

### c. Inference of Reasonableness

{¶ 40} Once a plaintiff satisfies the first two parts of the test by demonstrating a prima facie case, "'then an inference arises that this third factor is also present.'" *Kauffman* at ¶ 71, quoting *CompuServe, Inc.*, 89 F.3d at 1268, citing *Am. Greetings Corp.*

*v. Cohn*, 839 F.2d 1164, 1170 (6th Cir.1988). This inference applies in all but "the unusual case." *Kauffman* at ¶ 71, quoting *Am. Greetings*, 839 F.2d at 1170, quoting *First Natl. Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.1982).

{¶ 41} The trial court determined appellants satisfied the first two factors, but not the third, without any discussion of the inference pertaining to the third test. Moreover, the trial court noted the "sporadic" visits to Ohio and lack of evidence on how frequent VelveTop picked up materials each year, as well as the fact that VelveTop and John B. Walsh were not signatories to the Franchise Agreement. Essentially, the trial court addressed the third factor as a stand-alone requirement, lacking any benefit of an inference arising from satisfaction of the first two prongs. The trial court elevated this third factor by apparently requiring appellants to produce evidence of the frequency of VelveTop's presence in Ohio, a most stringent standard for proving the third factor considering the applicable authority.

{¶ 42} Contrary to the trial court's interpretation, the final inquiry regarding due process is whether the claim has enough connection to Ohio to make exercise of jurisdiction over appellees reasonable. Resolution of this test, considering the applicable inference, "involves merely ferreting out the unusual cases where [Ohio's interest in resolving the dispute] cannot be found." *S. Machine Co.,* 401 F.2d at 384. The Ohio General Assembly provides guidance in determining Ohio's interest, as outlined in Ohio's long-arm statute, which provides for jurisdiction over those who transact business in this state or cause tortious injury within this state. R.C. 2307.382(A)(1), (4), and (6).

21.

{¶ 43} Exercise of personal jurisdiction does not offend due process in this instance. "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (Citations omitted.) *Burger King*, 471 U.S. at 473, 105 S.Ct. 2174, 85 L.Ed.2d 528. In cases where an out-of-state actor has purposefully acted and derived a benefit from their activities, moreover, "it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities[.]" *Burger King* at 474, citing *Kulko v. California Superior Court*, 436 U.S. 84, 96, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

{¶ 44} Finally, the fact that contact may have been "sporadic" is not determinative. "If it creates a 'substantial connection' to the forum state, a single purposeful contact is enough to satisfy the requirements of due process." (Citations omitted.) *Fallang v. Hickey*, 40 Ohio St.3d 106, 108, 532 N.E.2d 117 (1988). In this case, appellants claim injury to corporations located in Ohio, caused by appellees' actions, and arising from appellees' contacts with the forum state. Accordingly, exercise of personal jurisdiction over appellees is reasonable, and the trial court erred in determining otherwise. We find appellants' first assignment of error well-taken.

22.

## IV. Conclusion

**{¶ 45}** Having found the exercise of personal jurisdiction over appellees VelveTop and John B. Walsh proper, we reverse the judgment of the Erie County Common Pleas Court and remand the matter for further proceedings against all defendants. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.