[Cite as *XPX Armor & Equip., Inc. v. SkyLIFE Co., Inc.*, 2021-Ohio-2559.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

XPX Armor and Equipment, Inc.

Court of Appeals No. L-20-1123

Appellant

Trial Court No. LN 02019011856

v.

The Skylife Co., Inc.

**DECISION AND JUDGMENT**

Appellee

Decided:  July 23, 2021

* * * * *

Gerald R. Kowalski and J. Peter Millon, for appellant.

Bruce W. Boerst, Jr., and Michelle Safro, for appellees.

* * * * *

**OSOWIK, J.**

## Introduction

**{¶ 1}** The appellant and judgment creditor in this case is XPX Armor and

Equipment, Inc. ("XPX").  XPX obtained a default judgment from a trial court in North

Carolina against The SkyLIFE Co., Inc., the appellee and judgment debtor herein.  XPX

sought to enforce that judgment in the Lucas County Court of Common Pleas under Ohio's Uniform Enforcement of Foreign Judgments Act, R.C. 2329.21 et seq. The common pleas court found that North Carolina judgment was not entitled to full faith and credit, in part, because it had not acquired personal jurisdiction over SkyLIFE. On that basis and as set forth below, we affirm.

## Background

{¶ 2} XPX manufactures equipment for military and commercial purposes in North Carolina. On June 26, 2019, XPX filed a complaint in the Superior Court of Hoke County, North Carolina ("the Superior Court") alleging that SkyLIFE breached an oral agreement to purchase nearly 18,000 custom-made parachutes. SkyLIFE is an Ohio corporation that manufactures and supplies aerial delivery packages to government organizations involved in humanitarian aid.

{¶ 3} According to XPX's president and owner, Timothy D'Annunzio, the parties' relationship began in August of 2016 when SkyLIFE "requested that XPX provide [it] with a manufacturing quote for cruciform parachutes." (D'Annunzio Aff. at ¶ 6). In the complaint, XPX alleges that, between May of 2017 and October of 2018, SkyLIFE "induced" XPX to "specially manufacture goods" that resulted in an "initial supply agreement." (North Carolina Complaint at ¶ 8). Based upon that agreement, XPX "began producing, offered to deliver, and sent invoices" to SkyLIFE for "specially-manufactured cargo parachutes." XPX claimed that SkyLIFE breached the initial supply agreement by refusing to accept delivery or pay for the parachutes. The alleged breach

2.

resulted in XPX filing suit—*in Ohio*—on November 30, 2017.  (L.C.C.C.P. case No. CI0201704976).[1]

{¶ 4} The North Carolina lawsuit centers around XPX's claim that, during the pendency of the Ohio case, the parties negotiated a "second supply agreement." According to XPX, between April 17, 2018 and June of 2018, the parties "engaged in protracted written and verbal negotiations regarding [the] sale of already-complete specially-manufactured cargo parachutes and related harnesses and D-rings that had been produced in accordance with the Initial Supply Agreement."  (North Carolina Complaint at ¶ 14).  Pursuant to the second supply agreement, XPX shipped "approximately 17,959" of those items to SkyLIFE, but SkyLIFE "failed and refused to tender payment" for them. As a result, XPX claims that it "incurred substantial losses through payment [to] its suppliers and creditors * * * in addition to the loss of potential profit."  (North Carolina Complaint at ¶ 11).  The North Carolina case seeks to enforce the second supply agreement.

---

[1] The "Ohio case" is an antecedent case to the one at bar, involving the initial supply agreement.  On May 16, 2019, the Lucas County Court of Common Pleas granted summary judgment in SkyLIFE's favor, and XPX appealed.  We reversed.  By judgment entry dated September 18, 2020, we found that the parties had entered into a "binding written contract" and that issues of fact existed as to the initial supply agreement's "terms, scope, or effect."  We remanded to the trial court on that issue for further proceedings. *XPX Armor & Equipment, Inc. v. The SkyLIFE Co., Inc.,* 6th Dist. Lucas Nos. L-19-1109, L-19-1293, 2020-Ohio-4498.

3.

{¶ 5} On October 28, 2019, the court in North Carolina Superior Court entered a default judgment in favor of XPX and awarded it $932,333.67 in damages, plus pre and post-judgment interest.

{¶ 6} XPX sought to enforce the North Carolina judgment in Ohio by filing a foreign judgment and creditor's affidavit in the Lucas County Court of Common Pleas on December 5, 2019. SkyLIFE moved to vacate the foreign judgment, arguing that it was void and therefore unenforceable. The trial court agreed. It found that the superior court did not have personal jurisdiction over SkyLIFE and also that service of the complaint and summons had "failed." XPX appealed and raises eight assignments of error for our review:

> **Assignment of Error No. 1:** The trial court erred, exceeded its authority, and misapplied the law in its July 1, 2020 Opinion and Order ("Opinion") (submitted herewith as Attachment A to the Appendix) in this foreign judgment enforcement action when it collaterally attacked, and reversed issues which were already decided by the North Carolina court of original jurisdiction in is judgment in favor of Appellant/Judgment Creditor, XPX Armor and Equipment, Inc. ("XPX"), a North Carolina company (*see* October 28, 2019 North Carolina judgment, filed as an Exhibit to XPS's Notice of Filing Foreign Judgment and submitted herewith as Attachment B to the Appendix).

4.

**Assignment of Error No. 2:** The trial court erred, exceeded its authority, and misapplied the law in its Opinion by improperly expanding the scope of Judgment Debtor/Appellee The SkyLIFE Co., Inc.'s ("SkyLIFE") Civ.R. 60 Motion to Void and Vacate Foreign Judgment ("Civ.R. 60(B) Motion") and granting such Civ.R. 60(B) Motion, despite acknowledging that the foreign judgment is not subject to attack as voidable under Civ.R. 60(B).

**Assignment of Error No. 3:** The trial court erred, exceeded its authority, and misapplied the law in its Opinion by reversing and collaterally attacking the North Carolina court's proper exercise of jurisdiction over SkyLIFE in the North Carolina lawsuit, including by reversing, collaterally attacking, finding void, and vacating the North Carolina court's judgment.

**Assignment of Error No. 4:** The trial court erred, exceeded its authority, and misapplied the law in its Opinion when it found that the North Carolina judgment is void and vacated for lack of personal jurisdiction, where the North Carolina court properly exercised personal jurisdiction over SkyLIFE under North Carolina's long-arm statute and general and specific jurisdiction under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

**Assignment of Error No. 5:** The trial court erred and contradicted the evidentiary record and term of the parties' two separate agreements to XPX's prejudice by treating the parties' written First Agreement entered in 2017 (Exhibit A to SkyLIFE's 60(B) Motion), which is the subject of a different lawsuit pending before the Ohio trial court and on appeal before this Court, and the parties' separate oral Second Agreement entered in 2018, which was the subject of the North Carolina lawsuit and this foreign judgment enforcement action, as one and the same, and further erred by relying on the First Agreement as a basis for the trial court's finding in its Opinion.

**Assignment of Error No. 6:** The trial court erred, exceeded its authority, and misapplied the law in its Opinion by reversing and collaterally attacking the North Carolina court's determination by that SkyLIFE was properly served under North Carolina law. (*See* Appendix, Attachment B)

**Assignment of Error No. 7:** the trial court erred, exceeded its authority, and misapplied the law in its Opinion when it granted SkyLIFE's Civ.R. 60(B) Motion and found the North Carolina judgment void and vacated based on ineffectual service, where SkyLIFE's registered statutory agent was properly served with the summons and complaint and other filings in the North Carolina lawsuit with applicable North Carolina law.

6.

**Assignment of Error No. 8:** The trial court erred, exceeded its authority, and misapplied the law in its Opinion when it imposed heightened, unfair, and prejudicial service obligations on XPX beyond what it required under North Carolina's rules and precedent, and by creating new exceptions to North Carolina's service rules and precedent which impose heightened, unfair, and prejudicial service obligations on XPX.

### Law and Analysis

{¶ 7} Generally, judgments from a sister state are entitled to full faith and credit in Ohio. U.S.C.A. Const. Art. 4, Section 1. *Litsinger Sign Co. v. Am. Sign Co.,* 11 Ohio St.2d 1, 4, 227 N.E.2d 609 (1967); *Digitalbiz Corp. v. Friedman-Swift Assoc., Inc.*, 1st Dist. Hamilton No. C-120422, 2013-Ohio-666, ¶ 9. The Full Faith and Credit Clause does not mean that a judgment issued by one state that is filed in a second state becomes a merit decision by the courts of the second state. *Bradley v. Holivay,* 183 Ohio App.3d 596, 2009-Ohio-3895, 918 N.E.2d 166, ¶ 5 (8th Dist.). Rather, when applied to judicial determinations, full faith and credit means that a valid judgment issued in one state must be recognized, without examining the underlying merits of the action, by all other states. *Id.*

{¶ 8} Ohio's version of the uniform enforcement of foreign judgments act is set forth in R.C. 2329.021 et seq. A "'foreign judgment' means any judgment, decree, or order of a court of the United States, or of any court of another state, that is entitled to full faith and credit in this state." R.C. 2329.021.

7.

{¶ 9} A foreign judgment may be authenticated, or domesticated, in Ohio by filing it in the court of common pleas. R.C. 2329.022 provides,

A copy of any foreign judgment authenticated in accordance with section 1738 of Title 28 of the United States Code, 62 Stat. 947 (1948), may be filed with the clerk of any court of common pleas. The clerk shall treat the foreign judgment in the same manner as a judgment of a court of common pleas. A foreign judgment filed pursuant to this section has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of common pleas and may be enforced or satisfied in the same manner as a judgment of a court of common pleas.

{¶ 10} Full faith and credit may be denied to a judgment of a sister state where that judgment is void. *Appel v. Berger,* 149 Ohio App.3d 486, 2002-Ohio-4853, 778 N.E.2d 59, ¶ 40 (10th Dist.). In other words, "a judgment from a sister state is subject to collateral attack in Ohio if there was no subject-matter or personal jurisdiction to render the judgment under the sister state's internal law or if the assertion of jurisdiction over the defendant violated the Due Process Clause." (Citation omitted.) *Digitalbiz* at ¶ 9. Essentially, "[o]nly foreign judgments which are void are subject to collateral attack in Ohio." *Id.,* quoting *Trimax Holdings v. Larson,* 10th Dist. Franklin No. 97APE10–1355, 1998 WL 353873, *2 (June 30, 1998). If a judgment is merely voidable, relief must be sought in the foreign state. *Appel* at ¶ 40.

8.

{¶ 11} Here, the North Carolina Superior Court found that it had "jurisdiction over the subject matter and over [SkyLIFE]." When XPX sought to enforce that judgment, with the filing of the creditor's lien in the common pleas court, SkyLIFE moved to vacate the North Carolina judgment under Civ.R. 60(B). SkyLIFE argued that the North Carolina court never acquired personal jurisdiction over it because the company did not have sufficient minimum contacts with that state and because it was never served with the summons and complaint. The court of common pleas agreed with both arguments, finding that the North Carolina judgment was void because "service was ineffectual" and because the "North Carolina court lacked personal jurisdiction over [SkyLIFE]."

{¶ 12} In its first and second assignments of error, XPX argues that the trial court erred by addressing the merits of SkyLIFE's Civ.R. 60(B) motion because such motions are limited to voidable judgments. Again, if a foreign judgment is merely voidable, relief must be sought in the foreign state. *Appel* at ¶ 40. XPX complains that the trial court "contort[ed]" SkyLIFE's Civ.R. 60(B) motion by "selectively evaluat[ing] challenges to personal jurisdiction of the [North Carolina] court."

{¶ 13} A trial court has inherent authority to vacate a void judgment. *Patton v. Diemer,* 35 Ohio St.3d 68, 518 N.E.2d 941 (1988). We agree with the trial court that it was not "limited" by the fact that SkyLIFE styled its motion under Civ.R. 60(B) because "the appropriate arguments about jurisdiction [were] in the briefs and [were] addressed by both parties." *See* J.E. at fn. 2, citing *State ex rel. Dewine v. 9150 Group L.P.,* 9th Dist. Summit No. 25939, 2012-Ohio-3339, ¶ 6. That is, SkyLIFE raised and fully argued

9.

its claim that the North Carolina judgment was void, and XPX addressed those same arguments in its memorandum in opposition. The trial court did not err in addressing those arguments. We find XPX's first and second assignments of error not well-taken.

### Personal Jurisdiction

{¶ 14} We consider XPX's third, fourth, and fifth assignments of error, all of which challenge the trial court's decision regarding personal jurisdiction, together.

{¶ 15} Personal jurisdiction is a question of law that we review under a de novo standard of review. *Kauffman Racing Equip., L.L.C. v. Roberts,* 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 27.

{¶ 16} In determining whether a state court has personal jurisdiction over a nonresident, the court must conduct a two-step analysis. First, the transaction must fall within the language of the state's "long-arm" statute. Second, the exercise of jurisdiction must not violate the due process clause of the Fourteenth Amendment to the United States Constitution. *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 183-184, 624 N.E.2d 1048 (1994); *See also Tom Togs, Inc. v. Ben Elias Indus. Corp.,* 318 N.C. 361, 364, 348 S.E.2d 782 (1986).

{¶ 17} "When a trial court determines its jurisdiction without conducting an evidentiary hearing, it must view all allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiff and resolve all reasonable competing inferences in his favor." *Hall v. Tucker,* 161 Ohio App.3d 245, 2005-Ohio-2674, 829

10.

N.E.2d 1259 (4th Dist.), ¶ 16, citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541 (1994); *But see, State ex rel. DeWine v. 9150 Group L.P.* at ¶ 14-16 (Distinguishing the "lopsided standard" of review enjoyed by a plaintiff when confronted with a motion to dismiss under Civ.R. 12(B)(2) versus the standard applicable to a common law motion to vacate and finding that the plaintiff –when challenged with a common law motion to vacate—must demonstrate personal jurisdiction over the defendant by a preponderance of the evidence).

### 1. North Carolina's Long Arm Statute

{¶ 18} N.C. Gen.Stat. § 1–75.4(5) states, in relevant part, that jurisdiction is proper in any action which: * * * c. Arises out of a promise, made anywhere to the plaintiff * * *, by the defendant to deliver or receive within this State, or to ship from this State goods, documents of title, or other things of value.

{¶ 19} As described by the common pleas court, XPX alleged in the North Carolina complaint that it and SkyLIFE entered into an "agreement" whereby 18,000 parachutes "would be shipped to [SkyLIFE]." The court found that the facts alleged in the complaint, viewed "in a favorable light," to XPX, were "likely *just* sufficient to satisfy the long-arm statute." (J.E. at 13; emphasis in the original.)

{¶ 20} We agree and find that N.C. Gen.Stat. § 1-75.4(5)(c) was satisfied, given XPX's claim that the parties agreed that the parachutes would be shipped *from North Carolina*. The parachutes qualify as both "goods" and "things of value." *Accord Embark, LLC v. 1105 Media, Inc.,* 231 N.C. App. 538, 543, 753 S.E.2d 166 (2014).

11.

Accordingly, we find that the trial court properly concluded that jurisdiction existed under the North Carolina's long-arm statute.

## 2. Due Process

{¶ 21} The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant. A tribunal's authority depends on the defendant's having such "contacts" with the forum state such that "the maintenance of the suit" is "reasonable" and "does not offend traditional notions of fair play and substantial justice." *International Shoe Co.* at 316-17; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __U.S.__, 141 S. Ct. 1017, 1019, 209 L. Ed.2d 225 (2021) (Commenting that *International Shoe* remains "[t]he canonical decision in this area.")

{¶ 22} There are two types of personal jurisdiction: general and specific. XPX claims that the North Carolina Superior Court's exercise of jurisdiction was proper under either application.

{¶ 23} *General jurisdiction*: A state court may exercise general jurisdiction only when a defendant is "essentially at home" in the State. *Ford* at 1024. General jurisdiction, as its name implies, extends to "any and all claims" brought against a defendant. Thus, the claims need *not* relate to the forum State or the defendant's activity there. Indeed, the claims may concern events and conduct that occurs "anywhere in the world." *Id.* "But that breadth imposes a correlative limit: Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction. In what [the United States Supreme Court has] called the 'paradigm' case, an individual is subject

12.

to general jurisdiction in her place of domicile. And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business." (Internal quotations omitted.) *Id.,* quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (Finding that general jurisdiction over Ford Motor Co. would attach in Delaware, its state of incorporation, and Michigan, its principal place of business). *See also Kauffman Racing Equip.* at ¶ 46 ("General jurisdiction is proper only where a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.").

{¶ 24} Here, there are no facts to suggest that North Carolina is SkyLIFE's "home." Indeed, its state of incorporation is in Delaware, and its principal place of business is in Ohio. According to the company's president, SkyLIFE is not registered to do business in North Carolina, has no statutory agent there, does not own property or have any branch offices in the state, and none of its officers or directors live there. (Potter Aff. at ¶ 6). While XPX claims that SkyLIFE "maintained a continuous and systematic relationship with * * * the State of North Carolina" it points to no ties or contacts between SkyLIFE and that state, *other than* those pertaining to the initial supply agreement and the second supply agreement. (Appellant's Brief at 18-19). There are simply no facts to suggest that SkyLIFE had maintained the type of contacts in the state of North Carolina such that it would be amenable to jurisdiction for claims arising outside of that state or unrelated to its business relationship with XPX. In the absence of such

13.

facts, we agree with the trial court that the North Carolina Superior Court did not have general jurisdiction over SkyLIFE.

{¶ 25} *Specific jurisdiction* is "different." As recently explained in *Ford Motors,*

> [Specific Jurisdiction] covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name purposeful availment. The defendant, we have said, must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home—by, for example, exploi[ting] a market in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not at home—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum. Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. (Internal citations and quotations omitted.) *Id.* at 1024-1025. *See also Kauffman* at ¶ 48-49.

14.

**{¶ 26}** We apply a three-part test to determine whether a defendant has the minimum contacts necessary for exercise of specific jurisdiction. *InFrasys, Inc. v. Bros. Pavement Prod., Corp.,* 6th Dist. Erie No. E-19-047, 2020-Ohio-1157, ¶ 33-45, citing *Kauffman* at ¶ 48-49 (Applying federal law). XPX must demonstrate that (1) SkyLIFE "purposefully availed" itself of the privilege of acting in the forum state or causing a consequence in the forum state, i.e. North Carolina; (2) the cause of action must arise from SkyLIFE's activities there; and (3) SkyLIFE's acts or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over SkyLIFE reasonable. *Kauffman* at ¶ 48-49.

**{¶ 27}** As a preliminary matter, we first address XPX's argument that the trial court "improperly relied upon" the first supply agreement—specifically the forum selection clause set forth therein—in finding that the North Carolina Superior Court lacked specific jurisdiction over SkyLIFE. The first supply agreement, a written contract which is being litigated in Ohio, contains a choice of forum clause that provides, "[t]he parties agree and consent to the exclusive jurisdiction in the Courts of Lucas County, Ohio to interpret and enforce any provision hereof." According to XPX, the second supply agreement, an oral contract, contains no forum selection provision. XPX insists that the two contracts are "separate" and distinct from one another and therefore that the forum selection clause has no bearing on the North Carolina Superior Court assuming specific jurisdiction over SkyLIFE in this case.

15.

{¶ 28} Viewing XPX's claim in its favor—that the forum selection clause "applies only to the First Agreement" and that the North Carolina lawsuit "solely concern[s] the parties' Second Agreement"—then the corollary must also be true. That is, XPX's case in favor of the North Carolina Superior Court assuming specific jurisdiction over SkyLIFE must rise or fall based upon the alleged facts giving rise to the North Carolina case. Indeed, whether one purposely established contacts with the forum state "[i]nvariably requires an analysis of factors *peculiar to the individual transaction*." (Emphasis added.) *Anilas, Inc. v. Kern*, 31 Ohio St.3d 163, 165, 509 N.E.2d 1267 (1987).

{¶ 29} According to the complaint in this case, the second supply agreement was reached as a result of "protracted written and verbal negotiations * * * between April 17, 2018 and June 2018." (North Carolina complaint at ¶ 14, 16). Accordingly, in applying the facts of this case to the three-part test announced above, we confine our review to the allegations pertaining to the formation and alleged breached of the second supply agreement. And, again, we do so viewing the allegations in the pleadings and the evidence in a light most favorable to XPX and resolving all competing inferences in its favor. *Goldstein,* 70 Ohio St.3d at 236, 638 N.E.2d 541.

{¶ 30} Purposeful availment is present when the defendant's contacts with the forum state "proximately result from actions by the defendant [itself] that create a 'substantial connection' with the forum State." *Kauffman* at ¶ 51 citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (additional citation omitted.). The defendant's conduct and connection with the forum

state must be such it "should reasonably anticipate being haled into court here."

*Kauffman* at ¶ 51, citing *Burger King* at 474-475.

{¶ 31} In support of its case, XPX relies upon an affidavit from its president, Timothy D'Annunzio.  In that 39 paragraph affidavit, *only* paragraph 39 pertains to the instant cause of action, i.e. the formation and breach of the second supply agreement. According to D'Annunzio, "XPX under[took] significant steps to mitigate damages suffered as a result of the manufacturing of custom parachutes for SkyLIFE [under to the first supply agreement].  *Included in these efforts was the shipment, at SkyLIFE's request, and acceptance of delivery of 17,959 parachutes, 16,140 harnesses, and 17,959 d-rings from XPX to SkyLIFE * * *.*  A breakdown of the shipments are as follows."  The affidavit then identifies three shipments it "agreed to ship," dated April 18, May 10, and June 18, 2018 and the subsequent invoices it directed to SkyLIFE's facility in Rossford, Ohio, in the amount of $318,780; $471,690; and $141,863, respectively.  None of the invoices were paid, and XPX filed suit in North Carolina on June 26, 2019. (D'Annunzio Aff. at ¶ 39(a)-(c); emphasis added).

{¶ 32} In its brief, XPX argues that its "three shipments of parachutes from North Carolina in 2018 alone is enough to satisfy and establish the North Carolina court's [specific] jurisdiction over SkyLIFE."  (Appellant's Brief at 21).  Citing *Burger King,* XPX argues that "[a] single transaction in some instances may be sufficient to satisfy the requisite minimum contacts if it gives rise to the liability asserted in the suit."  But, the Supreme Court in that case made clear that "[i]f the question is whether an individual's

17.

contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King Corp.*, 471 U.S. at 478, 105 S. Ct. 2174, , 85 L. Ed. 2d 528. Rather, it is the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.*

{¶ 33} Moreover, "[s]everal federal courts have declined to find that a defendant's mere purchase of goods from another state creates minimum contacts with that state for purposes of personal jurisdiction and have distinguished situations where the nonresident defendant is a buyer, as opposed to a seller." *Austin Miller Am. Antiques, Inc. v. Cavallaro,* 10th Dist. Franklin No. 11AP–400, 2011-Ohio-6670, ¶ 16. In *Cavallaro,* the Tenth District addressed whether Ohio had personal jurisdiction over the out-of-state buyer of an antique chandelier from an Ohio corporation. *Id.* at ¶ 2. The court determined that, "[t]he mere existence of a contract between the defendant and a forum resident does not provide the requisite contacts and 'use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the "minimum contacts" required by due process.'" *Id.,* quoting *Scullin Steel Co. v. Natl. Ry. Utilization Corp.,* 676 F.2d 309, 313-14 (8th Cir.1982). *Accord, Med Express v. Univ. of Colorado Denver*, 9th Dist. Medina No. No. 14CA0024–M, 2015-Ohio-144, ¶ 20-26 (Finding that

the Ohio trial court lacked personal jurisdiction over a Colorado buyer where the buyer contacted an Ohio entity, and negotiated and entered into an agreement for the purchase of a good because "essentially both *Cavallaro* and the present case involved isolated product purchases.").

{¶ 34} In this case, there is simply a dearth of evidence to show that SkyLIFE purposefully availed itself of the privilege of acting in North Carolina. Viewing the facts in a favorable light, XPX points to *no* specific communications, visits, or payment *by* SkyLIFE into North Carolina with respect to the second supply agreement. At most, it claims that it, i.e. XPX, "under[took] significant steps" to offload its "previously manufactured parachutes" and that it shipped them "at SkyLIFE's request." The "'purposeful availment' requirement ensures that the defendant will not be subjected to another state's jurisdiction based on the "unilateral activity of another party or third person[.]" *Kauffman* at ¶ 51 quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404, fn.8. In sum, we find that XPX failed to make a prima facie showing as to the first factor of the test.

{¶ 35} Based upon the record before us, we conclude that the SkyLIFE's contacts with North Carolina, in relation to the negotiation of the second supply agreement does not rise to the level of a "substantial connection" with the state of North Carolina to allow it to "reasonably anticipate being haled into court [there.]" *Burger King* at 474–75. Accordingly, we agree the trial court that the North Carolina Superior Court lacked personal jurisdiction over SkyLIFE, and we need not conduct further analysis to

19.

determine whether asserting personal jurisdiction over it would comport with "fair play and substantial justice." *See Joffe v. Cable Tech, Inc.,* 163 Ohio App.3d 479, 493, 2005-Ohio-4930, 839 N.E.2d 67, ¶ 35 (10th Dist.), quoting *Burger King* at 477.

{¶ 36} XPX's remaining assignments of error challenge the trial court's other basis to grant SkyLIFE's motion to vacate and void the foreign judgment. In its decision, the trial court found that, under North Carolina law, service of the complaint and summons had "failed" and therefore that the resulting default judgment by the superior court was "void." Given our decision—that the superior court did not have personal jurisdiction over SkyLIFE—we find that issue of whether the company was properly served with the summons and complaint are moot. Accordingly, we decline to address XPX's sixth, seventh and eighth assignments of error.

### Conclusion

{¶ 37} Having found that the Superior Court of Hoke County, North Carolina did not have personal jurisdiction over SkyLIFE, that court's judgment against SkyLIFE was not entitled to full faith and credit in this state. We affirm the July 2, 2020 decision of the Lucas County Court of Common Pleas not to enforce the North Carolina judgment on that basis, and accordingly, we find XPX's third, fourth and fifth assignments of error not well-taken.

{¶ 38} As set forth herein, we also find XPX's first and second assignments of error not well-taken.

20.

**{¶ 39}** Finally, we find XPX's sixth, seventh and eighth assignments of error are moot, and we decline to address them.

**{¶ 40}** XPX is ordered to pay the costs of this appeal pursuant to App.R.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Myron C. Duhart, .J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.