MAYLE, J.
Introduction
{¶ 1} This case involves a traffic citation issued by the Toledo Police to the defendant-appellee, Billy Owens, for driving his truck on a city street that exceeded the weight limits. Prior to trial, Owens filed a motion to dismiss the case pursuant to Crim.R. 12(C). Owens argued that the traffic sign, notifying drivers of the weight limit, failed to comply with state standards and was therefore unenforceable. The Toledo Municipal Court granted Owens' motion.
{¶ 2} On appeal, the city argues that the trial court erred in deciding the general issue in the case, prior to trial, in contravention of the rule.
{¶ 3} For the reasons that follow, we agree with the city. Accordingly, we reverse the lower court's judgment and remand the case for a trial on the merits.
Facts and Procedural History
{¶ 4} On July 8, 2016, Toledo Police Officer J. Taylor cited Owens for operating his "Kenworth Motor Semi" on Navarre Avenue in Toledo, Ohio, in excess of the weight limit set for that street. According to the citation, Owens' truck weighed 78,000 pounds on a street where the weight limit was 6,000 pounds, for an "overage" of 72,000 pounds. Owens was cited for violating Toledo Municipal Code 339.09, "Vehicle weight limits" and R.C. 4511.12, "Obedience to Traffic Control Devices."
{¶ 5} Prior to trial, Owens filed a motion to dismiss the case, pursuant to Crim.R. 12(C). Owens argued that the traffic control device does not comply with the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"). The OMUTCD sets standards, including size and placement, for traffic control devices, such as signs. State law mandates that "[a]ll traffic control devices erected on a public road, street, or alley, shall conform to the state manual and specifications." R.C. 4511.11(D).
{¶ 6} The street sign in question reads, "THROUGH VEHICLES OVER 6000 LBS PROHIBITED." The parties agree that the sign is 24 inches tall and 18 inches wide. The bottom of the sign is 80 inches from the ground.
{¶ 7} In his motion, Owens claimed that the sign on Navarre Avenue did not conform to the standards set forth in the manual because it was placed too low and was too small. Accordingly, he argued that it was unenforceable.
{¶ 8} The city contested the motion on the basis that it required the court to evaluate evidence beyond the face of the *105 citation and was therefore inappropriate as a pretrial motion under Crim.R. 12(C).
{¶ 9} The trial court ruled that Owens produced sufficient evidence to defeat the presumption that the traffic control device complied with the OMUTCD, which the city failed to rebut. It granted Owens' motion to dismiss, and the city appealed. The city alleges the following assignment of error:
Assignment of Error: The trial court erred when it granted defendant's motion to dismiss.
Law and Analysis
{¶ 10} The city argues that Owens' motion to dismiss was not procedurally ripe. According to the city, the issue of size and placement of the traffic control device goes toward the general issue of the case. It could not, therefore, be resolved by way of a pretrial motion as set forth under Crim.R. 12(C). In addition, the city claims that the sign is, in fact, permissibly sized and placed.
{¶ 11} We review de novo a trial court's ruling on a motion to dismiss. State v. Swanson , 11th Dist. Ashtabula No. 2015-A-0006, 2015-Ohio-4027, 2015 WL 5729710, ¶ 18.
{¶ 12} Crim.R. 12(C) sets forth those pretrial motions that may be made and considered by the trial court. The rule states, in part, "[p]rior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue." The rule does not define the term "general issue."
{¶ 13} A Crim.R. 12(C) motion "can only raise matters that are capable of determination without a trial on the general issue. The Ohio Rules of Criminal Procedure do not provide for the equivalent of a civil motion for summary judgment." State v. Gaines , 193 Ohio App.3d 260, 2011-Ohio-1475, 951 N.E.2d 814, ¶ 16 (12th Dist.).
{¶ 14} For example, in State v. Palmer , 131 Ohio St.3d 278, 2012-Ohio-580, 964 N.E.2d 406, ¶ 24, the accused was indicted for failing to provide notice of his change of address and to verify his current address, as required by R.C. Chapter 2950, for persons who have been formerly convicted of a sexually oriented offense. Pursuant to Crim.R. 12(C), the accused moved to dismiss the case. He argued that he was not subject to the registration and verification provisions because he was convicted of a sexually oriented offense before those requirements took effect. Id. at ¶ 8-10. The court agreed. It found that "the general issue for trial in this context is whether the accused violated the law as set forth in the indictment. Where the law simply does not apply, the trial court is well within its authority to dismiss the indictment before trial." Id. at ¶ 24.
{¶ 15} We applied Palmer , albeit with a different result in Vermilion v. Meinke , 6th Dist. Erie No. E-12-037, 2013-Ohio-2250, 2013 WL 2404759. There, the defendant was charged with conducting a commercial fishing operation in violation of a municipal zoning ordinance. The defendant moved to dismiss the case against him, pursuant to Crim.R. 12(C), which was denied. Id. at ¶ 3.
{¶ 16} On appeal, we affirmed. We found that the zoning ordinance clearly applied to the defendant. Thus, "[t]he proper determination under Crim.R. 12(C) is whether the language within the charging instrument alleges the offense." Id. at ¶ 6. "The complaint accuses [the defendant] of operating a commercial fishing operation in an RL-District. This is not one of the allowed uses set forth in Vermilion Codified Ordinance 1270.10(b). As such, this is a general issue for trial." Id. at ¶ 11.
*106 Because "the charging instrument was adequate on its face," we found the denial of the pretrial motion proper. Id.
{¶ 17} We analyze the case before us as we did in Vermilion. The charging instrument herein, the traffic citation, identifies two provisions that Owens allegedly violated. The first, Toledo Municipal Code 339.09, "Vehicle weight limits" provides, "[w]henever a vehicle weight limit has been established on any public street, highway or alley as provided in Traffic Schedule III, no person shall operate or move any vehicle or combination of vehicles upon any such street, highway, or alley weighing in excess of such vehicle weight limit, * * *." Traffic Schedule III sets a 6000 pound weight limit for Navarre Avenue.
{¶ 18} The second provision, R.C. 4511.12, "Obedience to Traffic Control Devices," provides, in part, "(A) No * * * driver of a vehicle * * * shall disobey the instructions of any traffic control device placed in accordance with this chapter * * *." Again, the street sign in question reads: "THROUGH VEHICLES OVER 6000 LBS PROHIBITED."
{¶ 19} First, there is no suggestion by Owens that he was not subject to the two provisions cited above, and we find that he was, as a driver on the street in question, subject to them.
{¶ 20} According to the citation, Owens' truck weighed 78,000 pounds. Thus, we find that the charging instrument is valid on its face and that it alleges violations of law. It follows, then, that the general issue for trial is whether Owens, in fact, violated Toledo Municipal Code 339.09 and/or R.C. 4511.12.
{¶ 21} Owens claims that the stipulated facts in this case allowed the trial court to decide this case, as a matter of law, without a trial. He argues,
While the OMUTCD does not have an exact equivalent, there are regulations for similar signs that read "NO TRUCKS" AND "NO THROUGH TRUCKS." According to the OMUTCD, those signs must be 24' by 24' in size, and 7 feet (84 inches) from the sidewalk. The sign in this case measures 24' x 18' and the bottom of the sign is 80 inches from sidewalk.
{¶ 22} Owens concludes that the sign is unenforceable because it did not comply those size and height restrictions.
{¶ 23} The city counters that, because the sign in question is not listed in the OMUTCD or the Sign Designs and Markings Manual ("SDMM"), the size and height standards cited by Owens are not applicable.[1] It argues,
[T]he sign in question is not listed in the OMUTCD or SDMM. Therefore, traffic engineers had to construct a sign using the guidelines provided in the manuals. The sign in question was not located on a freeway or expressway. Therefore, the sign should have dimensions that are multiples of six inches. 24 and 18 are both multiples of six, thus bringing the sign within compliance. [Owens'] exhibit clearly shows that an electrical box is located on the pole to which the sign was affixed. The sign is located at the highest point possible on the pole given the location of the electrical box. The OMUTCD insists that signs be at standard heights when possible. If *107 not possible, then the sign must be located where it is visible, and where drivers can react to it in a timely fashion. As the sign is visible before the intersection, as shown in [Owens'] exhibit, the sign is in compliance with the manuals.
{¶ 24} We think that the issue of which regulations to apply and whether the sign complies with those regulation(s) necessitates examination of the street sign and its placement on the street in question.
{¶ 25} Further, the arguments raised by Owens' motion required an examination of that sign and its surroundings. In addressing those arguments, the trial court impermissibly went beyond the face of the citation and addressed the general issue for trial, in contravention of Crim.R. 12(C).
{¶ 26} In granting Owens' motion, the trial court said,
In the instant case, there is a presumption that the traffic control device was properly placed, and in compliance with the OMUTCD. However, the court finds that [Owens] has presented sufficient evidence to rebut this presumption. As indicated in [ City of Painesville v. Kincaid , 11th Dist. Lake No. 2015-L-023, 2015-Ohio-5532, 57 N.E.3d 152 ], the burden shifts back to the prosecution to prove otherwise. Because the prosecution failed to produce any evidence to the contrary, the court finds [Owens'] motion to dismiss well-taken and hereby grants same.
{¶ 27} First, in Kincaid , a trial on the merits was held. That case did not involve, and is not germane to, the issue of evaluating a pretrial motion under Crim.R. 12(C).
{¶ 28} Second, the trial court acted improperly when it prematurely concluded that Owens "presented sufficient evidence to rebut [the] presumption" of lawfulness. State v. Kolat , 11th Dist. Lake No. 2001-L-117, 2002-Ohio-4699, 2002 WL 31008773, ¶ 16. A Crim.R. 12(C) motion to dismiss "must not entail a determination of the sufficiency of the evidence to support the indictment because such a determination cannot properly be made until, at the earliest, the conclusion of the state's case in chief and pursuant to a Crim.R. 29(A) motion." Swanson , 11th Dist. Ashtabula No. 2015-A-0006, 2015-Ohio-4027, 2015 WL 5729710. See also State v. Patterson , 63 Ohio App.3d 91, 95, 577 N.E.2d 1165 (11th Dist.1989) (A motion to dismiss may only "test the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the state or the defendant.").
{¶ 29} The reason to avoid such a "premature declaration" was addressed in State v. Varner , 81 Ohio App.3d 85, 88, 610 N.E.2d 476 (9th Dist.1991). In Varner , the defendant was charged with breaking and entering and was released on a recognizance bond. When he failed to appear for his arraignment, he was indicted for violation of the bond. The defendant moved to dismiss the second indictment on the basis that he was not bound by the bond. The trial court agreed and dismissed that case. The court of appeals reversed. It said,
The propriety of [the defendant's] motion to dismiss required an examination of the bond he had signed to secure his release. The Ohio Rules of Criminal Procedure, however, do not allow for "summary judgment" on an indictment prior to trial. * * * Since [the defendant's] claim went beyond the face of the indictment he could present his challenge only as a motion for acquittal at the close of the state's case. Crim.R. 29(A). As a general rule, "premature declarations," such as that presented here, are strictly advisory and an improper exercise of judicial authority.
Were we to recognize the validity of such a procedure, trial courts would *108 soon be flooded with pretrial motions to dismiss alleging factual predicates in criminal cases. Burglary suspects would challenge the charges against them on the grounds the "structures" entered were not "occupied," R.C. 2911.12(A), while those accused of driving while intoxicated would argue that they were not "operating a motor vehicle" at the time of the offense, R.C. 4511.19(A). Already overburdened prosecutors would be forced to respond to such attacks with specific evidence in advance of trial. Squaring this summary procedure with the constitutional right to a jury trial, moreover, could create a legal quagmire from which our courts might never emerge. Additionally, courts of appeal would be constantly called upon for advisory opinions. Id. at 86-87, 610 N.E.2d 476.
{¶ 30} We find the above argument compelling. See also State v. Brady , 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 12-18. In his motion to dismiss, Owens challenges the charges against him on the grounds that the traffic sign was not "in proper position." R.C. 4511.12(A). But, like the examples above, this alleges a factual predicate and requires an examination of the evidence beyond the face of the indictment. Upon remand, Owens will have the opportunity to present evidence that the sign does not comply with the OMUTCD, just as the city will have the opportunity to present its own evidence. At that time, and if appropriate, Owens may move for an acquittal. We express no opinion as to the enforceability of the sign in question, and we decline to address the substance of the arguments by either party.
{¶ 31} Finally, we address a "sign case" from our own district that the trial court and Owens relied upon, Bowling Green v. McNamara , 132 Ohio App.3d 240, 724 N.E.2d 1175 (6th Dist.1999). In McNamara , the parties stipulated that the height of the sign was not properly positioned under the OMUTCD, and the driver moved to dismiss the case on that basis. The trial court denied the motion, and the appellant pled guilty. On appeal, we reversed, holding, "[s]ome Ohio courts have applied a lesser standard to the placement of traffic signs. * * * However, in our view, the plain language of the statute requires us to follow those cases which mandate strict compliance with the OMUTCD regulations." (Citations omitted.) Id. at 242, 724 N.E.2d 1175. We concluded that the trial court erred in failing to dismiss the case.
{¶ 32} In the case before us, unlike in McNamara , the parties do not agree that the sign failed to comply with the OMUTCD. Moreover, the issue before us currently is not how strictly to enforce the OMUTCD but rather which regulation(s) to apply, which can only be determined once the sign is examined and evaluated. Finally, the appropriateness of the defendant's Crim.R. 12(C) motion to dismiss was not raised or addressed in McNamara . Therefore, for these reasons, we find McNamara inapposite to the issue before us at this time.
{¶ 33} For the foregoing reasons, the judgment of the Toledo Municipal Court, dismissing the case against Owens, is reversed. This matter is remanded for further proceedings consistent with this decision. Pursuant to App.R. 24, costs are assessed to appellee.
Judgment reversed.
Arlene Singer, J.
Thomas J. Osowik, J.
CONCUR.

The Sign Designs and Markings Manual ("SDMM") contains standard sign designs for traffic control devices addressed in the OMUTCD and the Ohio Department of Transportation ("ODOT") Traffic Engineering Manual ("TEM"), as well as some signs not yet specifically addressed in either of these manuals. The SDMM has been incorporated by reference into both the OMUTCD and the TEM.