[Cite as *State v. Scanes*, 2023-Ohio-1096.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No.  L-22-1128

    Appellee                                            Trial Court No.  CR0202102724

v.

Elizabeth Scanes                                        **<u>DECISION AND JUDGMENT</u>**

    Appellant                                           Decided:  March 31, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney,
Brenda J. Majdalani and Dawn Haar,  Assistant Prosecuting
Attorneys, for appellee.

Patricia Horner, for appellant.

* * * * *

**ZMUDA, J.**

**{¶ 1}** Appellant, Elizabeth Scanes, appeals the judgment of the Lucas County

Court of Common Pleas, denying her motion to dismiss the indictment and imposing a

community control sentence after her no contest plea to the indictment.  For the reasons

that follow, we affirm.

# I. Facts and Procedural History

{¶ 2} On July 20, 2021, a criminal complaint was filed by J.S., the father of appellant's child, alleging appellant took their daughter, M.S., across state lines to Florida on July 28, 2016, and refused to return M.S. to J.S., who alleged he had legal custody. On October 26, 2021, the grand jury returned an indictment, charging appellant with interference with custody in violation of R.C. 2919.23(A)(1) and (D)(1) and (2), a felony of the fifth degree.

{¶ 3} On November 19, 2021, appellant appeared for arraignment and entered a not guilty plea to the charge. The trial court granted appellant a monitored, own recognizance bond, and required her to abide by visitation terms "pursuant to Family Court order." J.S. was present at the arraignment, and he informed the trial court that he had full custody of M.S., with no visitation granted to appellant at that time. J.S. indicated a separate proceeding was pending in another court concerning custody and visitation.

{¶ 4} Appellant participated in several pretrials and the exchange of discovery. On March 8, 2022, the state filed notice of supplemental discovery, indicating production of several orders entered in a separate proceeding in the juvenile division. On March 14, 2022, appellant filed a motion to dismiss the indictment pursuant to Crim.R. 12(C).

{¶ 5} Appellant attached exhibits to her motion, including Exhibit 1: excerpts purporting to be part of a civil protection order (CPO) issued on August 11, 2020,

2.

pursuant to R.C. 3113.31; Exhibits 2 through 6: excerpts from case No. 18271777 in the Lucas County Court of Common Pleas, Juvenile Division; and Exhibit 7: an internet print-out from the Child Welfare Information Gateway titled "Child Witnesses to Domestic Violence."

{¶ 6} Exhibit 1, the CPO excerpts referenced by appellant, include the Form 10.01-G warnings regarding "THE ATTACHED DOMESTIC VIOLENCE PROTECTION ORDER," required to be attached to the front of all civil and criminal domestic violence protection orders issued by the courts. The second page of Exhibit 1 consists of "page 8 of 9" of the CPO, reciting the provisions of the court's order regarding the "respondent" and the "protected persons named in this Order" in effect until August 11, 2021. Neither page included in Exhibit 1 identifies the petitioner, the respondent, or the protected persons named in the order.

{¶ 7} Exhibits 2 through 6 consists of orders entered in the juvenile division proceedings. The entries identify appellant as plaintiff and J.S. as defendant, and indicate each party is represented by counsel. The orders demonstrate hearings and pretrials throughout 2021 concerning custody. On January 6, 2021, the juvenile court entered interim orders and awarded J.S. interim temporary custody. On February 25, 2021, the court granted appellant's motion for a guardian ad litem home study at her home in Florida. On April 6, 2021, the court permitted appellant to return with M.S. to the state of Florida until May 6, 2021. On May 10, 2021, the court ordered M.S.to be returned to

3.

J.S.  Finally, on March 2, 2022, the juvenile division approved the parties' consent entry, awarding legal custody to J.S., "effective as of January 6, 2021."  The consent judgment granted appellant supervised visitation in the state of Ohio, and prohibited appellant from removing "the child from the State of Ohio."

{¶ 8} Exhibit 7 consists of a publication by the Child Welfare Information Gateway's State Statutes Series, addressing various state laws applying to children who "may be present or a witness to the act of domestic violence."  The information pertains to aggravating circumstances and/or sentencing enhancements for the offender, based on the presence of children.  Additionally, the publication notes that "Ohio requires the offenders to undergo counseling."[1]

{¶ 9} Appellant did not specify a subsection for her Crim.R. 12(C) motion, but argued that the August 11, 2020 CPO barred the custody proceeding initiated by J.S., and that the criminal complaint relied on the award of custody to J.S. in those allegedly improper custody proceedings.  Appellant's argument simultaneously challenged the custody proceedings while acknowledging her own participation in those proceedings, as follows:

> Respondent, [J.S.], caused and encouraged a Guardian ad Litem to
>
> go to the Juvenile Division of the Common Pleas Court and convince

---

[1] Appellant included this print-out to demonstrate that the purported CPO implicitly provided protection to M.S. as a child exposed to domestic violence, without any authority to support this assertion.

4.

Magistrate Sorah to issue an ex parte Order giving custody to Respondent on January 6, 2021.

Then, surprisingly, and once again contrary to the [domestic relations division's] Order, on February 26, 2021, for some unexplained reason, the Juvenile Division of the Common Pleas Court held that Mother [appellant] requested a GAL to do a home study in Florida at her expense. That Court further held 'Mother's parenting time may be modified upon recommendation of the GAL

There are two basic things wrong with that particular Order. First, one can surmise [appellant] got some really bad legal advise [sic] from her attorney. Second, it may be the first time in U.S. Judicial History when a GAL was given permission to reverse a Court of Competent Jurisdiction's Order!

* * *

On December 17, 2021, [J.S.'s attorney] filed a proposed Consent Judgment Entry giving Respondent – father – legal custody of the minor child effective as of January 6, 2021, once again in violation of the original Court Order. * * *

The State, in bringing criminal charges is also in violation of the original Court Order which they were aware of: It was included in the

discovery material provided to [appellant.] In bringing this indictment, the State violated the full faith and credit given to Courts of equal jurisdiction, and Article One Section 9 of the United States Constitution which very clearly states: "No Bill of Attainer or ex post facto Law shall be passed."

When [appellant] refused to give Respondent [J.S.] possession of the child – whether in May or July of 2021 – she was following the Order issued by the Domestic Relations Division of the Common Pleas Court. * * *

{¶ 10} The state opposed appellant's motion to dismiss, arguing the motion tested the "sufficiency of the indictment" under Crim.R. 12(C)(2). The state construed the motion as challenging the sufficiency of the allegations in the indictment rather than the propriety of the proceedings. The state contended that the allegations within the indictment properly stated an offense under Ohio criminal law, and therefore, the motion required consideration of the evidence that would be offered at trial.

{¶ 11} Appellant filed no reply to the state's argument in opposition.

{¶ 12} The trial court adopted the state's argument in denying the motion to dismiss in a judgment entered March 22, 2022.

{¶ 13} On March 23, 2022, appellant entered a plea of no contest to the indictment. The trial court conducted a Crim.11(C) colloquy at the plea hearing, to

6.

inquire as to the knowing, voluntary, intelligent nature of appellant's plea. The trial court addressed appellant as follows:

> THE COURT: Now, when we originally called your case I asked the prosecutor to read into the record the plea agreement. She did that. Did you hear what the prosecutor said? I asked her to describe the plea agreement.
>
> THE DEFENDANT: No, I didn't actually.
>
> THE COURT: All right. [Prosecutor], would you mind. If you need to approach.

The prosecutor then recited the terms of the plea agreement on the record.

> THE COURT: Okay. Did you hear what she said?
>
> THE DEFENDANT: Yes, I remember that.
>
> THE COURT: Was that a correct description of the deal to which you and your attorney are agreeing?
>
> THE DEFENDANT: I though it said up to.
>
> THE COURT: In terms of the fine?
>
> THE DEFENDANT: Yeah
>
> THE COURT: The fine is a possible fine of up to $2,500.
>
> THE DEFENDANT: Okay.
>
> THE COURT: So is that all correct?

7.

THE DEFENDANT:      Yeah.

THE COURT:      Okay, Do you have any other questions about the plea agreement?

THE DEFENDANT:      I don't think so.

THE COURT:      Okay.  You can ask them at any time because I need to make sure that you understand it.  Okay.

THE DEFENDANT:      Okay.

The trial court then explained that appellant was entering a no contest plea to interference with custody, a felony of the fifth degree, stating:

Do you understand that by pleading no contest to this felony offense you're not admitting your guilt but are admitting the truth of the facts alleged in the indictment?  So no contest plea is not the same thing as a guilty plea, and the reason why it's different is you're not admitting your guilt, but by pleading no contest you are admitting the truth of the facts alleged in the indictment.  Do you understand that?

Appellant hesitated, indicated she would prefer to plead not guilty, but would do "[w]hatever you guys recommend."  Based on this response, the trial court paused proceedings and gave appellant time to talk to her attorney.

{¶ 14} After speaking with trial counsel, appellant indicated she wished to go forward with her no contest plea and the trial court continued with the colloquy.  Despite

8.

further hesitation by appellant, after the trial court explained the rights appellant waived by entering her plea and the consequences of entering a plea, appellant indicated she understood and wished to enter a plea of no contest to the indictment. Appellant acknowledged that her trial counsel explained the terms of the plea agreement and she had no questions.

{¶ 15} The prosecutor then recited the facts into the record as follows:

On or about the 29th day of May, 2021, in Lucas County, Ohio, the defendant Elizabeth Scanes did knowingly without purpose – without privilege to do so or being reckless in that regard did knowingly entice, take, keep, or harbor a child under the age of 18 from the parent, guardian, or custodian of that person, in violation of Ohio Revised Code Section 2919.23(A)(1), (D)(1), and (D)(2), interference with custody, a felony of the fifth degree. Specifically, the defendant failed to return a child under the age of 18, [M.S.], to her father [J.S.] who had temporary custody of said child. The child was taken across state lines from Ohio to Florida, and the child was not returned.

Appellant did not dispute the alleged facts, but instead asserted "there was cause for me to leave Ohio and go to Florida * * * Due to domestic violence and stuff, that's all." Despite these protestations, appellant agreed to enter her plea of no contest. The trial

9.

court accepted the plea and found appellant guilty, and continued the matter for a presentence investigation report, prior to sentencing.

{¶ 16} On May 4, 2022, the trial court held a sentencing hearing. After considering the statutory factors, the trial court determined a non-prison sanction was proper and imposed two years of community control, with notice that violation of the terms of community control "will lead to a longer or more restrictive sanction for defendant, including a prison term of 12 months." The trial court provided notice of up to two years of discretionary post release control, and after finding appellant would not have the means to pay costs, waived all costs, including the costs of prosecution.

{¶ 17} Appellant filed a timely appeal.

## II. Assignments of Error

{¶ 18} Appellant asserts two assignments of error:

1. APPELLANT'S PLEA WAS NOT VOLUNTARILY, KNOWINGLY, OR WILLINGLY ENTER [sic.] INTO.

2. THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION TO DISMISS.

## III. Analysis

{¶ 19} Appellant challenges both the validity of the charge against her and the knowing, intelligent, voluntary nature of her plea of no contest. We consider error relative to the charge first, addressing the assigned errors in reverse order.

10.

### A. Motion to Dismiss

{¶ 20} In her second assignment of error, appellant argues the trial court erred in denying her motion to dismiss because the indictment violated the Full Faith and Credit Clause of the United States Constitution and Article 1, Section 9 of the Ohio Constitution. In support, she argues the CPO granted against J.S. "should have, in essence, protected appellant from any contact initiated by [J.S.] up and until the CPO was no longer effective, which was August 2021." Appellant argues that the criminal complaint "was a legal impossibility."

{¶ 21} A motion to dismiss pursuant to Crim.R. 12(C) presents a question of law, subject to de novo review on appeal. *State v. Owens,* 2017-Ohio-2909, 91 N.E.3d 103, ¶ 11 (6th Dist.), citing *State v. Swanson,* 11th Dist. Ashtabula No. 2015-A-0006, 2015-Ohio-4027, ¶ 18. Pursuant to Crim.R. 12(C)(1) and (2), "any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue[,]" including:

> (1) Defenses and objections based on defects in the institution of the prosecution;

> (2) Defenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding)

11.

{¶ 22} The trial court determined the motion challenged the factual sufficiency of the indictment. In denying the motion, the trial court found the indictment contained sufficient allegations to allege an offense, with consideration of argument regarding the general issue for trial beyond the scope of a Crim.R. 12(C)(2) motion. Had appellant's motion challenged the evidence against her, rather than the legitimacy of the charge, such analysis would have been appropriate. *See Owens* at ¶ 30 (motion may not be based on factual predicate that requires examination of the evidence beyond the face of the indictment).

{¶ 23} Appellant did not specify a subsection under Crim.R. 12(C), with Crim.R. 12(C)(1) and (2) permitting challenge to the institution of the prosecution or the indictment itself. Despite the lack of specificity in appellant's Crim.R. 12(C) motion, however, appellant clearly argued a separate issue from the issue addressed by the trial court. Appellant did not challenge the factual allegations in the indictment, but instead argued that J.S. lacked authority to file his complaint and the complaint alleged a crime that "was a legal impossibility." Rather than challenging the sufficiency of the facts, appellant challenged the underlying legal basis for the charge. Her motion, therefore, alleged issues beyond those relevant to the trial on the merits and necessitated consideration of evidence beyond the face of the indictment, because the motion did not clearly "embrace what would be the general issue at trial." *State v. Brady,* 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 18.

12.

{¶ 24} "Crim.R. 12 empowers trial courts to rule on 'any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue.'" *State v. Palmer,* 131 Ohio St.3d 278, 2012-Ohio-580, 964 N.E.2d 406, ¶ 22, citing Crim.R. 12(C). Furthermore, a determination as to whether a law applies to a defendant does not "embrace the general issue for trial." *Id.* at ¶ 23- 24 (finding a defective indictment where reclassification under the Adam Walsh Act had been invalidated as unconstitutional, and as a result the "indictment depend[ed] on the unconstitutional application of law").

{¶ 25} Pursuant to Crim.R. 12(C), courts have considered challenges on a range of issues, not part of the trial, as a defect in the institution of the prosecution or in the indictment. For example, courts have addressed challenges based on the lack of personal jurisdiction. *State v. Gunnell,* 10th Dist. Franklin No. 13AP-90, 2013-Ohio-3928, ¶ 6-10 (rejecting "sovereign citizen" argument regarding jurisdiction over "natural person"); *State v. Cook,* 4th Dist. Pickaway No. 05CA39, 2006-Ohio-1953, ¶ 8 (jurisdiction waived by appearance and plea, despite failure of officer to serve defendant with a copy of the traffic citation).

{¶ 26} Courts have also considered the constitutionality of the statute charging the offense under Crim.R. 12(C). *State v. Puckett,* 2d Dist. Greene No. 05CA48, 2006-Ohio-1127, ¶ 6-7 (although waived by failing to timely assert the challenge, noted the conflict between domestic violence statute, conferring "legal status" on unmarried persons, and

13.

the "Defense of Marriage" amendment, barring legal status for "relationships of unmarried individuals").

{¶ 27} A challenge based on selective prosecution has also been addressed under Crim.R. 12(C). *State v. Jones,* 2d Dist. Clark No. 2019-Ohio-1548, ¶ 5, citing *State v. Brown,* 6th Dist. Ottawa No. OT-95-040, 1996 WL 139626 (Mar. 29, 1996) (additional citations omitted) (upon prima facie showing of selective prosecution based on "reasons forbidden by the Constitution," trial court must address in an evidentiary hearing under Crim.R. 12(C), prior to trial).

{¶ 28} Finally, courts have considered a challenge based on argument of legal impossibility. *State v. Peirano,* 10th Dist. Franklin No. 16AP-96, 2016-Ohio-5045, ¶ 14 (indictment dismissed where defendant was charged with trespass onto defendant's own property, a legal impossibility).

{¶ 29} In this case, appellant argued J.S. could not file a valid complaint and the charge against her was a legal impossibility. While this issue was not addressed by the trial court, we must affirm the judgment "if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial." *Toledo v. Schmiedebusch,* 192 Ohio App.3d 402, 2011-Ohio-284, 949 N.E.2d 504, ¶ 37 (6th Dist.), quoting *Reynolds v. Budzik,* 134 Ohio App.3d 844, 846, 732 N.E.2d 485, fn 3 (6th Dist.1999). Appellant's argument of "legal impossibility" is based on a prior court

14.

judgment granting her a CPO against J.S., and references the Full Faith and Credit Clause and the jurisdictional priority rule. Neither applies in this case.

{¶ 30} "The Full Faith and Credit Clause, Section 1, Article IV, United States Constitution, provides that 'Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. * * *'" *Holzmemer v. Urbanski,* 86 Ohio St.3d 129, 132, 712 N.E.2d 713 (1999), citing *Wyatt v. Wyatt*, 65 Ohio St.3d 268, 269, 602 N.E.2d 1166 (1992). Pursuant to the Full Faith and Credit Clause of the United States Constitution, Ohio courts must honor the judgments of other states. *Id.* In other words, "full faith and credit means that a valid judgment issued in one state must be recognized, without examining the underlying merits of the action, by all other states." *XPX Armor and Equip., Inc. v. SkyLIFE Co., Inc.,* 2021-Ohio-2559, 176 N.E.3d 821, ¶ 7 (6th Dist.), citing *Bradley v. Holivay,* 183 Ohio App.3d 596, 2009-Ohio-3895, 918 N.E.2d 166 (8th Dist.).

{¶ 31} In seeking dismissal in the trial court, appellant raised the issue of full faith and credit without reference to any out-of-state judgment. Instead, appellant argued that the juvenile division lacked the ability to determine custody issues, based on the domestic relations division's prior CPO against J.S., and despite appellant's participation in the juvenile division proceedings as demonstrated by the exhibits attached to her motion to dismiss in the trial court. Appellant's exhibits included the excerpt of a purported CPO that neither identifies appellant and her child as protected persons nor names J.S. as the

15.

respondent, the person allegedly ordered to have no contact with the protected person or persons. Additionally, appellant attached excerpts of orders from the juvenile division, awarding interim temporary custody of M.S. to J.S. and approving the parties' consent judgment entry, granting legal custody of M.S. to J.S., with appellant permitted supervised visitation with M.S. in the state of Ohio, only.

{¶ 32} On appeal, appellant now clarifies her argument, asserting the jurisdictional priority rule prevented *the juvenile division* from deciding custody in favor of J.S., based on the prior order of the domestic relations division. Had the juvenile division abided by the terms of the CPO, she argues, J.S. could not have been awarded legal custody, the basis for his criminal complaint. In essence, appellant invokes application of the jurisdictional priority rule to collaterally attack the custody determination of the juvenile division. In doing so, appellant does not argue that the trial court presided over a duplicative proceeding, but rather, implicitly acknowledges the criminal complaint led to a *subsequent* proceeding.

{¶ 33} There is nothing in the record to indicate appellant has appealed or otherwise challenged the custody determination of the juvenile division, based on her argument of the preclusive effect of a CPO granted by the domestic relations division. The jurisdictional priority rule, moreover, applies when two courts of concurrent jurisdiction both attempt exercise of jurisdiction over the same matter. *See State ex rel. Daily v. Dawson,* 149 Ohio St.3d 685, 2017-Ohio-1350, 77 N.E.3d 937, ¶ 15. Appellant

16.

argues no second proceeding regarding the same matter in this case. At best, she argues that a juvenile division custody matter, in which she participated, could not proceed while the domestic relations division CPO remained in effect. As a consequence, appellant reasons, she could not be charged with interference with custody while the CPO remained in effect.

{¶ 34} Relative to her motion to dismiss, appellant argues the charge itself was a legal nullity based on the legal effect of her CPO. There is little in the record to support this argument considering the lack of clear evidence of a CPO, naming J.S. as respondent and M.S. as a protected person. Furthermore, even presuming the CPO was issued against J.S. by the domestic relations division for the protection of M.S., as argued by appellant, the mere existence of the CPO does not support her argument of a legal nullity regarding the indicted charge.

{¶ 35} Appellant's "legal impossibility" argument rests on the position that the juvenile court could not determine custody until after the CPO expired. The CPO statute, however, demonstrates that "a CPO is not regarded as a custody proceeding." *Tabler v. Myers,* 173 Ohio App.3d 657, 2007-Ohio-6219, 880 N.E.2d 103, ¶ 14-15. A CPO affecting custody of a minor child is "only a temporary order that lasts until the issue is litigated in a domestic relations or juvenile court." *Id.* Pursuant to R.C. 3113.31(E)(3)(b), a protection order protecting "family or household members"

17.

terminates "on the date that a juvenile court in an action brought by the petitioner or respondent issues an order awarding legal custody of minor children."

{¶ 36} Construing appellant's claim of a CPO as true, and applying the law, the consent judgment in the juvenile division proceedings terminated the CPO as to M.S. by operation of law. "[W]hile the statute permits a court to issue temporary orders allocating parental rights and responsibilities in order to stop domestic violence, it does not vest the court with authority to modify the allocation of parental rights and responsibilities in the CPO proceeding." (Citation omitted) *Yazdani-Isfehani v. Yazdani-Isfehani*, 170 Ohio App.3d 1, 2006-Ohio-7105, 865 N.E.2d 924, ¶ 23 (4th Dist.).

{¶ 37} Considering the record before the trial court and on appeal, the trial court correctly denied the motion to dismiss despite incorrectly construing the issue as sufficiency of the allegations in the indictment. Because appellant's argument of a legal impossibility is wholly without merit, we find the trial court reached the correct decision, although for different reasons. *See Schmiedebush* 192 Ohio App.3d 402, 2011-Ohio-384, 949 N.E.2d 504, at ¶ 37, citing *Budzik,* 134 Ohio App.3d at 846, 732 N.E.2d 485, fn 3.

{¶ 38} Accordingly, we find appellant's second assignment of error not well-taken.

{¶ 39} Having found no defect or other basis to merit dismissal of the indictment, we next address appellant's plea of no contest to the charge.

18.

**B. No Contest Plea**

{¶ 40} In her first assignment of error, appellant argues her plea of no contest was not made "voluntarily, knowingly, or willingly." In support, she argues that the trial court failed to substantially comply with the notification requirements concerning non-constitutional rights, as provided by Crim.R. 11(C)(2)(a) and (2)(b).

{¶ 41} "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler,* 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.2d 286, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992*); State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25 (additional citation omitted.). A plea that was not made knowingly, intelligently, and voluntarily is unconstitutional and cannot be enforced. *Id.,* citing *State v. Engle,* 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).

{¶ 42} As part of the plea colloquy for a no contest or guilty plea, trial courts must personally address a defendant and inform the defendant of the rights given up and consequences of the plea, as outlined by Crim.R. 11, to ensure a knowing, intelligent, and voluntary plea. (Citation omitted) *Dangler* at ¶ 11. We review the colloquy, not to determine whether the trial court recited the language of the Rule, but to determine whether the record demonstrates an understanding, by the defendant, of the consequences of the plea. *Dangler* at ¶ 12.

19.

**{¶ 43}** To merit reversal, "the traditional rule is that [a defendant] must establish that an error occurred in the trial-court proceedings and that [the defendant] was prejudiced by that error." *Dangler* at ¶ 13, citing *State v. Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14-15 (additional citations omitted). However, a plea entered without explanation of the constitutional rights a defendant waives by entering the plea is presumed to be unknowing and involuntary, with no need to demonstrate prejudice. *Dangler* at ¶ 14, citing *Clark* at ¶ 31; *State v. Veney,* 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, syllabus. Furthermore, where a trial court fails, entirely, to address any portion of Crim.R. 11(C), an appellant need not demonstrate prejudice on appeal. *Dangler* at ¶ 15, citing *State v. Sarkozy,* 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

**{¶ 44}** Crim.R. 11(C)(2)(c) sets forth the constitutional rights: "the right to a jury trial, the right to confront one's accusers, the privilege against self-incrimination, the right to compulsory process to obtain witnesses, and the right to require the state to prove guilt beyond a reasonable doubt." *Dangler* at ¶ 14, citing *Veney* at ¶ 19. In this case, appellant does not challenge the explanation of these rights. Instead, appellant argues that the trial court did not *substantially comply* with the required explanations regarding rights and consequences, as set forth under Crim.R. 11(C)(2)(a) and (2)(b), and as a result, her plea must be vacated. Those provisions required the trial court to do the following, prior to accepting appellant's no contest plea:

20.

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

Crim.R. 11(C)(2)(a) and (2)(b).

{¶ 45} In challenging the trial court's substantial compliance with Crim.R.11(C)(2)(a) and (2)(b), appellant relies on *State v. Nero,* 56 Ohio St.3d 106, 564 N.E.2d 474 (1990), which references a standard no longer applicable in reviewing the colloquy for a no contest or guilty plea. In *State v. Dangler,* 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, the Ohio Supreme Court rejected the many tiered analysis of partial or substantial compliance and strict or literal adherence with the rule, finding "those formulations have served only to unduly complicate what should be a fairly straightforward inquiry." *Danger* at ¶ 17. The standard applied, post-*Dangler,* requires the following inquiry, instead:

(1) has the trial court complied with the relevant provision of the rule?

(2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and

(3) if a showing of prejudice is required, has the defendant met that burden?.

*Id.*

**{¶ 46}** Appellant fails to identify any portion of Crim.R. 11(C), omitted by the trial court in its colloquy. At best, appellant's challenge references the trial court's obligation to explain the effect or consequences of her plea, a challenge that requires demonstration of prejudice. She argues that the trial court did not ensure she fully comprehended the collateral, civil consequences of her criminal plea and as a result, the plea must be vacated for prejudice.

**{¶ 47}** We have addressed collateral versus direct consequences, and found no constitutional obligation to inform a defendant of all possible collateral consequences of a plea. *See State v. Harris,* 6th Dist. Erie No. E-06-015, 2007-Ohio-6362, ¶ 20. A plea requires knowledge of "relevant circumstances and likely consequences." *Id.,* quoting *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 24 L.Ed.2d 747 (1970). A trial court, furthermore, must inform a defendant of direct consequences of the plea, or an "immediate and automatic" consequence. *Id.,* citing *King v. Dutton,* 17 F.3d 151, 153

22.

(6th Cir.1994); *United States v. Jordan,* 870 F.2d 1310, 1317 (7th Cir.1989) (additional citations omitted.).

{¶ 48} "The test for prejudice is 'whether the plea would have otherwise been made.'" *Dangler* at ¶ 16, citing *Nero,* 56 Ohio St.3d at 108, 564 N.E.2d 464. Here, appellant argues that prejudice resulted from her plea because she was found guilty of a fifth-degree felony and her conviction was used against her in a subsequent juvenile court proceeding in which she was denied the opportunity for shared parenting. The record and the law provides no support for this assertion.

{¶ 49} Considering the record, appellant clearly understood she was entering a no contest plea to a felony offense. Therefore, appellant may not claim she lacked this understanding or demonstrate prejudice based on this clear and direct consequence. As to her custody battle, moreover, the trial court had no obligation to address the potential consequence of her criminal conviction on the custody proceeding. On March 2, 2022, the juvenile court approved a "consent" judgment entry awarding custody to J.S. Appellant did not enter her no contest plea until March 23, 2022, which belies the argument that her no contest plea was defective or otherwise "unknowing" as to civil collateral consequences and somehow "prejudiced" her ability to gain shared parenting. Appellant, furthermore, provides no authority that required notice of the consequence of her plea on the custody proceedings. Finally, considering the award of custody on March 2, appellant had already received an adverse judgment in the juvenile proceedings prior to

23.

entering her plea, with no argument regarding any additional, collateral consequences as a result of her plea and conviction.

{¶ 50} Courts consistently reject similar collateral consequence argument, even when those consequences seem harsh. In *State v. Radovanic,* 10th Dist. Franklin No. 13AP-193, 2013-Ohio-4157, the Tenth District Court of Appeals found a trial court had no obligation to inform a defendant that her plea could result in exclusion from participating in Medicaid. *Radovanic* at ¶ 15-16. Likewise, in *State v. Poppel,* 2d Dist. Champaign No. 2020-CA-34, 2021-Ohio-2536, the Second District Court of Appeals found a trial court had no obligation to inform a defendant that pleading guilty to misdemeanor assault would forfeit his right to own a firearm under federal law. *Poppel* at ¶ 20. The law is clear that "the effect of a plea on collateral matters is not a ground for rendering a plea involuntary." *State v. Absher,* 8th Dist. Cuyahoga No. 87061, 2006-Ohio-3717, ¶ 17 (loss of notary license a collateral matter, and trial court had no obligation to provide notice of this consequence); *see also Harris* at ¶ 21, citing *Jordan,* 870 F.3d at 1317 ("Because federal prosecutions do not automatically follow a state court conviction and depend on federal agency decisions, a state official's failure to inform a defendant of the possibility that a plea may be used in a subsequent federal prosecution does not render the plea in state court involuntary.").

{¶ 51} In this case, appellant argues as prejudicial only the felony conviction – for which she was on notice – and the collateral effect of that conviction on her custody

24.

proceedings in the juvenile division – which was not a direct and immediate consequence of her no contest plea. Neither matter demonstrates an involuntary plea or prejudice of the type that requires vacation of her no contest plea.

{¶ 52} We therefore find appellant's first assignment of error not well-taken.

## IV.    Conclusion

{¶ 53} Based on the forgoing, we affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay costs pursuant to App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                         _____
                                                            JUDGE
Gene A. Zmuda, J.

                                               _____
Myron C. Duhart, P.J.                                       JUDGE
CONCUR.

                                               _____
                                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.